Thank you. Thank you so much. Attorney Murray. Good morning. If it pleases the court, my name is Chris Murray. I represent the plaintiffs' appellants in this matter. The district court dismissed the amended complaint holding that the notice of intent to sue that had been served prior to the filing of the complaint was defective or did not comply with the requirements. The two specific areas where the district court found was that it said the permit violation was not sufficiently set forth in the notice of intent. May I make an attempted observation to tell me if I'm wrong? But what's a little bit confusing or misleading about this case is that what's really interesting to most people about it is the nature of this particular defendant, right? But in fact, the questions of the environment, the environmental questions are preliminary, primarily addressed or to be addressed by the state. And in a sense, your client is a backup to the state rather than the state being a backup to your client. So it's possible for your client not to meet each and every little detail of what it must show in order to appear and act in this case. But the fact that it's not a decision on the merits of whether there's a problem up in Orange County. It's a question of whether your client has dotted the I's, crossed the T's, and allowed them to act in this case. So we're not necessarily arguing the merits with respect to the… That's correct. That is absolutely correct.  But we feel that the note of intent satisfies the requirements. They make the argument that it doesn't specify the permit provision that was violated. But that's a disingenuous question. The violation of the Clean Water Act was the discharge of the fecal chloroform without a permit. So to say, well, show me the permit that you're violating. There's no permit. And that is clearly a violation of the Clean Water Act and the Supreme Court. I'm sorry. Not to disagree at all. But I thought one of the questions is whether you or your client has identified a point source which is specifically required for your client to be involved. That's correct. There were two grounds. There was the issue of the permit violation, and then there was the issue of the point source. We believe that they did identify the point source. First of all, you've got to understand the geography of the area. There's a steep hill that runs into the waters. There's a sewer treatment plant at the top of the hill. It's a rural area. There's no other commercial or larger entities in the area. And the testing showed that immediately upstream from where the Dragon Spring property borders the waters, the fecal chloroform levels were fine. But when you go to test right next to the Dragon Springs property, the fecal chloroform levels are extremely high. So it seems to me that your NOI is identifying the activity causing the problem and the originating location and the location of the flow. Where is your best evidence or text that suggests that that is sufficient? The regulations contain the provisions that you're supposed to have in the notice of intent. Every element that's set forth in the regulations is set forth in the notice of intent. That's interesting because what I thought you were going to say is that the notice is to allow the defendant to remedy the problem and that you have given them enough to know that. And that is what the requirements are designating you to do. I mean, is that right? That's accurate. The purpose of the notice of intent is to give them an opportunity. You don't think as a matter of law that you have to do a specific point source? Well, I think the point source, it depends on what you consider a point source. There was one where there was a case that they said that basically a farm with a cow field could be a point source. Is that like you need a specific, identify a specific pipe or something, some part? Okay, so that's a second argument. You're arguing, I think, so I think one, you're arguing that the purpose of the notice is to make sure that folks have enough to remedy the damage which you've given them. So you would say, I'm sure your colleague on the other side would disagree. But then the other issue is that the definition of point source isn't as specific as your colleague on the other side is suggesting. Absolutely, absolutely. So let me, I want to drill down a little bit on that because I was trying to figure out where, you know, the point source is significant for the purpose of the merits, right, whether there's a violation. Right. Is it the case that we should view the term location in the regulation dealing with what you need to identify in the notice of intent as being synonymous with point source for purposes of the actual underlying regulatory violation? That's a good question, but I think it basically is. Okay. The location is where the discharge is coming from, and we've identified that in the notice of intent and specified the location. You know, we don't have access to the property. We don't have an ability to go at this point in time. You know, we test it right next to their property, and that's where the chloroform, and I don't think it's a leap of logic to say if the water up here is fine, the water here has elevated levels, and there's no other potential source for the fecal chloroform other than the property of the defendant, that the defendant is discharging at that location, especially at a point in time when you're just giving, as you said, notice. And is this point source question possibly a reason why this permit conversation might be relevant? If this was an actual permit violation that you were alleging, that permit would apply to a point source, and we'd be evaluating whether it complied with the terms of the permit. As I understand, I think at least generously but fairly reading your notice, the core of the notice that's given is that you're making a discharge without authorization, without a permit, and the discussion of the permits is to highlight the fact that there's no permit that authorizes surface water discharge of this pollutant. And to the extent that there is a permit that might authorize groundwater discharge, it's in a level that's not, that this way exceeds. Correct. Absolutely. Can I ask a follow-up then? So as a factual matter, do you believe that Dragonspring would have been required to apply for a permit for the surface water discharge separately? They would have to apply for a permit that specifically allows them to make a discharge of fecal chloroform, which they never did, and they don't have it. Basically, you get permits, the species permits or NPDES permit that says, okay, you can discharge X, Y, and Z at these amounts. And if you're not given permission to discharge X, Y, and Z, then you can't discharge it. So they could go and seek a species permit to allow the discharge of fecal chloroform if they feel that that's the only way they can operate their, what do you call it, their wastewater treatment plant and their facilities, but they haven't done that, and there's no permit that allows them to do this discharge. And I understand the significance of the speedies. Is that sort of the absence of any speedies permit authorization for this discharge? I'm a little bit puzzled. I'm trying to get my arms around the role of the construction permit in this whole conversation. It doesn't strike me that it adds or detracts anything to the core issue, but am I missing something? No, the construction permit is to allow the construction, it specifically says you have to comply with speedies permit. Where does it say that? I actually didn't see where it said, is it the preface where it says that you have to comply with whatever permits you have? Is that, okay. Yeah. So it doesn't add anything, it doesn't add anything. That allows them to do it. To whatever the analysis of the speedies permit might add to this conversation. That's correct. Okay. Can we go to jurisdiction? That's okay? Sure. With the presider's permission. So part of where I'm struggling with the jurisdictional question is what does it mean in this instance, in your opinion, if the NOI is judged deficient and that the action is dismissed with prejudice? Does that mean you can amend the NOI and bring another case? Does that mean that you think that you can't? I think that it means that we can't, which I don't understand, because they could pollute tomorrow or two years from now, and I don't know if we're allowed to bring a citizen suit based on the same discharge of people chloroform. It's like they get a pass, at least with regard to us. Is the issue really one in which the decretal language was a problem more than a jurisdictional issue? One of the things that's challenging is the merging of the merits and the jurisdiction. I think there's an argument for why this might be true in this case, but if you could talk through what you think the pathways are for the jurisdictional issue. Well, the simple pathway, as far as we're concerned, is that the note of intent was sufficient. So regardless whether it's subject matter jurisdiction or not, there should still be a reversal. But with regard to subject matter jurisdiction, it's been a very complicated issue as to whether this is, I mean, the Supreme Court punted on the issue or did not address the issue as to whether it was subject matter jurisdiction. I'm so sorry. Can you speak a little louder? Sure. The Supreme Court did not decide whether it was a subject matter jurisdiction, but held that the court couldn't do anything unless the note of intent was correctly filed. From my reading, it would be that if the court can't do anything unless a proper notice of intent was filed, it means the court doesn't have subject matter jurisdiction. And that was a prerequisite to be able to get into court. So that would be a subject matter jurisdiction defense. And so if it was found not to be sufficient, then you would have a right to read. So are the two related to the – is the subject matter jurisdiction inquiry related to the dismissal with prejudice problem?  And could you elaborate on that? Because if it's dismissed for subject matter jurisdiction, that's the end. The court doesn't have any more power to issue orders. They just say you didn't do it, the subject matter jurisdiction. And we cited, I think, in the letter that we recently filed, that subject matter jurisdiction dismissals are generally without prejudice. Because if you then comply with whatever the prerequisite is to bring – If there's no jurisdiction, you have no ability to say anything because it's not – That's what I was – that's the part that I was trying to get at. That's correct. Is the problem one of jurisdiction or is the problem one of the discreet language of dismissing it with prejudice? I think it's both. I think it's the subject matter jurisdiction, I think, gives the analytical framework for saying if the court doesn't have jurisdiction, they can't have a paragraph saying it's going to be – it's with prejudice because the court doesn't have the jurisdiction to say that. So that paragraph – that part of the order from the court was outside, was leading in jurisdiction, so he had no power to make that issue. And there are cases that say subject matter jurisdiction is without prejudice because it's not on the merits. And then just one last thing related to that. Generally, when the NOA is – the NOI is judge deficient, you just refile it, right? Right. And we actually – we did have a first – there was a prior notice of intent that was held insufficient, and the court specifically said if you just put the dates in that you tested, then I would find the notice – or could find that the notice of intent was sufficient. We then put those dates in, refiled it, and recommenced the action, and then got the order that's under review. All right. We'll get a chance to hear again from you at the end. So thanks, and we'll hear from Attorney Goodhouse. Good morning. May it please the Court, my name is Brendan Goodhouse. I'm with the law firm Cuddy and Fetter for the Appellee Dragon Springs here. I think it's important to start by looking at the overall statutory and regulatory context and where citizens fall in that in regulating water pollution in the Clean Water Act. So Congress did not set up a system where a citizen can suspect somebody is polluting, give them notice, file a lawsuit, and try to substantiate those suspicions through discovery. Citizens are supposed to be supplemental to the primary regulators, and the pre-suit notice serves an important function in keeping that balance, and it serves as some sort of a gatekeeping function. So you would disagree that it is a way of trying to remedy or to put you on note – a way of remedying the issue. You actually think that it's a gatekeeping function, that it's supposed to be enforced so that some people can't make it through? That's one of the reasons, absolutely. That's what the Supreme Court said in House with the RCRA. I think there's – But the outcome is different than the purpose, right? Like, you know, an outcome of making sure that meritorious claims that could be remedied, that were pointed or directed toward the appropriate party with a meaningful opportunity to correct for it, is different than saying we are trying to have a bunch of tricky bells and whistles that we need people to add and hoops to jump through so that people make it, right? I mean – They're different, but they're not exclusive. Okay. What I'm saying – and this is what the Supreme Court said in House, three basic purposes to the – no, that was the RCRA, but it's the exact same structure, same requirements. First, it gives the primary regulator a chance to understand what the allegation is and investigate. Same thing with the target. It gives the target an opportunity to investigate, understand, and if there's something to correct, correct it. And the third thing is that it will minimize or at least lessen floodgates of citizen suits in federal courts. So what about 1311 and 1342? That is not enough. Is there a more specific regulation? Well, it's – yeah, 40 CFR 135.3 is the specific regulation. Well, right, but isn't it literally titled affluent limitations? What, 1311? Yeah. Yes, correct. So why isn't that a limitation within the meaning of that regulation? Well, okay, so this is why I started with talking about the role of the citizen suits. So every court that's looked at this, Fourth Circuit, strict and specific requirement. The Sixth Circuit, allow the defendant to identify all pertinent aspects of the alleged violation without extensive investigation. Ninth Circuit, tell a target precisely what it allegedly did wrong and when. The target is not required to play a guessing game. Can I just step back to the language of the regulation? It looks to me like there's four things in this notice provision. One is what's the specific standard alleged to have been violated? Now, the notice says 1311 and 1342. 1311 specifically says except a bunch of exceptions, the discharge of any pollutant by any person shall be unlawful. There's no exception in play here. That's, I think, the point of the discussion, the fact that the permits don't allow this. So is there anything deficient as to the first of the four things? What more needs to be said to identify the specific standard alleged to have been violated?  So talking about the specific notice here, what this specific notice says and, frankly, what the briefing has been and what the First Amendment complaint is, is we've done testing. There's high levels of pollutant. We know where you are. And we think that's coming from you. But to answer the question, Your Honor, the issue is we have two permits. They know we have these two permits. Okay? The notice and the First Amendment complaint and the briefing, it hedges constantly. The notice starts by saying this is in violation of their permits. It then hints at theories of unpermitted discharges. It also references surface water discharges. What does that even mean? Surface water discharge can mean a number of things. We have a wastewater permit. If you're going to say we're in violation of that permit, identify what we are doing that the permit doesn't allow. The best that they ever do is a generic surface water discharge. But surface water discharge means a whole lot of things. The reason you need a wastewater permit in the first place is because there is a presumption that that will get to surface water. Otherwise, the Clean Water Act doesn't attach. That's what the Supreme Court dealt with in the Maui case. It seems to me, and maybe we just have a different ‑‑ I have a different understanding from you as to sort of the role of this notice. It seems to me that a lot of your arguments may have purchased when we get to the merits of the case that they need more. They might even be subject to dismissal on the pleadings on these claims. I don't know. But on the notice provision, it is a notice provision. It's not let's litigate the merits of the notice, let's evaluate a 12B6 assessment at the notice stage. There is an opportunity to do that. Again, I'm coming back to the specific standard. At the end of the day, the permit alleges that it is violating the standard that prohibits discharges of a pollutant. I don't think anybody denies that fecal coliform is a pollutant without a permit. Is there any confusion about that? Yes. And this is where I want to come back to, and I think maybe it is a bit of a fundamental disagreement on what the standard is for looking at an NOI. And I've never seen a court do analysis of 12B6 versus. But in practice, you look at every court that has looked at, it's Catskill, you want to go back 20 years to when this court looked at it. More recent courts, you know, there's a couple in the Sixth Circuit and Fourth Circuit in the last couple of years on pre-suit notices. I would submit that everyone is actually applying something that is greater than a 12B6 standard. It is not a can we read this document in some sort of way where it makes out a claim. I've never seen any federal court be that loose. The Third Circuit in the Hercules case is often identified as sort of the most, I would say, citizen-friendly of the versions. But even then, it said you need reasonable specificity. That's above a Rule 8A standard. And it identified, you need to identify the outfalls, you're saying, specific dates. And that was, like I said, one of the more plaintiff-friendly ones. Everything else consistently is held. And you step back. Again, you look at this, the regulation, 60-day waiting period, which is not a lot of time. And the courts that have looked at this says, look, when you balance this all together, the idea is it's got to do more than just generally orient. Say, you're getting a pollutant in the water. We don't have access, so we don't know exactly how you're doing it, but you guys can figure it out. It's got to do more than generally orient the recipient as well as the primary regulator to what you're alleging, because otherwise it can't really serve the purpose of giving those entities time to act in that short period of time. And here, take the Southside quarry case in the Sixth Circuit in 2022. Some parallels here. It's obviously different. There's nothing that's exactly on point. But in that case, there were allegations regarding generally dumping from a landfill into waters. The target had a whole bunch of permits. The court said, you've got to do more than make a general, generic allegation that they're dumping toxins from this landfill into the waterways. They have permits. You have to analyze it in the context of this permit. Right, but his argument is that you don't have a permit. His argument is that you should have gotten a permit to discharge at a different water source. So doesn't that make a difference? This is where we get a little circular on this and why, if the notice was clearer, then we're in it. If the notice just said that, I would be having a different argument. I would still challenge it, because I think you have to do more than just say surface water, because, again, we inject into the ground. Well, wait a minute. If we can say groundwater, why can't we say surface water? I mean, this is a – No, no, because this is, again, the requirement that you explain in some way what you're doing wrong. So to say surface water, we can do everything right and there's still surface water discharge, because, again, and this is what I was talking about with the Maui case, groundwater eventually gets to surface water. That's why you need a wastewater permit, even though you're putting it into groundwater. But the notice itself here, it hints at a whole bunch of different ideas. And this was a Shark River cleanup case, Third Circuit. When you have a notice that can encompass a whole bunch of various theories, that is not enough to give adequate notice. And the other thing I want to point out, this idea that this has always been clear. This was about an unpermitted discharge. I'm sorry, but the last – just to make sure that I'm understanding. I read your briefs to say that it was deficient because you didn't identify a standard – or they didn't identify a standard limitation or they didn't identify the point source. Now I think what I heard you – is that wrong? We argued more than that. The district court said it found all the points compelling because we had dates, didn't explain the manner in which we were violating. It said it only needed to decide on those two grounds. So yes, that plus more. Okay. So the argument here is that they – the argument that I think I just heard you say, and I would invite you to correct me if I should be thinking about it a different way, is that they referenced so many things that you actually didn't know what you were accountable for. We've said that throughout, Your Honor. The point is this. Okay, but how can it both be not specific enough and too specific or too vague? It's too vague. It's too vague. So the specific thing, we said we have a wastewater permit, and I don't think these are exclusive arguments. I think they go together completely. You have to identify – we have something that governs what we do with wastewater. If you're saying we're doing something wrong with wastewater, point to the permit condition, point to the requirement, point to the regulation that's incorporated into that permit that we're violating. It doesn't do that. Second, when you say there's permit violations, there's unpermitted discharges, stormwater, which, by the way, the stormwater permit expressly allows surface water discharges. It's the first line of the permit that allows surface water discharges. When you throw all that in the mix, you leave Dragon Springs, the New York D.C., scratching its head about what exactly is this violation, and that's something we've argued in every single brief we've submitted in this case. So your view – tell me if this is a fair – I don't want to unfairly characterize – would be it isn't enough to say that there is an unpermitted discharge of a pollutant into the waters of the nation, and to identify within 100 yards – into the public waters, unless they can tell us what's happening on our property, whether we're violating our wastewater permit, and that's why it's bubbling up, or whether we're – have some other activity that's giving rise to this. Unless they can put that in their notice of intent, they don't get to go forward. It's tough to state a really hard-line rule on that. But is that essentially what you're saying? It's essentially what I'm saying. You have to have some idea of what you're doing wrong. It's not enough – I will say this as an affirmative statement. It is not – yes, it is not enough to just say water's getting into the river, polluted water's getting into the river. We don't know exactly how. You're in a position to figure out. I don't think any court's decision in looking at the pre-suit notice requirements has ever permitted that. And, again, that goes back to the role of the citizen suit. It's not to be a private AG, and like you have – But it is to provide more. I mean, the reason it exists is that we don't want to just rely on the states. We want someone else who's interested enough to make the effort, maybe is willing to put resources into it where the state's not, to be able to come and protect our public waters. I mean, why – it sounds like, from your description, that these citizen suits are something that the law is hostile to, but they created them. I don't – no, I don't want to give that impression. But, like, in the House room, when it talks about what the reason for these are, one of the things is to lessen the burden on federal courts of citizen suits. So I just mean it serves as a function as basically identifying that there's some merit and it's not an investigatory venture. We think you're doing something. We're not in a position really to say more. And every court that's looked at it says lack of knowledge is not an excuse for the requirements. They're still there. The Ninth Circuit has dismissed cases where the NOI say, and it appears to be violations of this. The Tenth Circuit has – or Seventh Circuit, I'm sorry, has said in the Carvey-Hefner, it's not what the citizen could allege if they knew more. It's what they know and can allege. That's the system that was set up here. So the citizen suit absolutely has a role, and it was created for a reason, but so was the pre-suit notice. That was required for a reason as well. I'm thinking from the lack of more questions that maybe we have your arguments. Sure. I didn't know if you wanted me to say anything on jurisdiction or – no? Okay. Thank you. Thank you. Just a couple of points. One, he keeps saying, oh, we allege that they discharged in surface water. That's it. We didn't. We also allege the specific surface water where the – I'm sorry. They also – it also states the specific surface water at issue, which was the Basher Kill and the Never Sink River. So it's not like, oh, you're discharging it to surface water. And second of all, if you're just looking at it from having some good faith basis to make the allegation that this discharge is occurring, this private not-for-profit group went out and tested on a number of occasions the level of fecal chloroform adjacent to the property, the hill that flows into the water, that there are no other properties around it, and then immediately upstream there's the fecal chloroform levels were fine. And that satisfies the statutory report. Absolutely. I think it more than satisfies. So I think that's where the issue is. I mean, I'm not hearing a lot of debate about what the sort of substance of the allegations are at some level, and I think what I'm hearing from the other side is that's not enough, saying stuff is coming into the river isn't enough, you have to have something more. And I'm wondering what your best case is that you can point us to, to reassure us that the level of specificity you have, not as to what's flowing into the river, but sort of knowledge about why it's flowing into the river is enough here. There's not a single case that says you have to go and explain why this illegal discharge is occurring in a notice of intent. You do have to identify a point source. You do have to identify a point source, and I believe we did that. What's the point source? It's the part of their property that's immediately adjacent to the rivers, that it's immediately downhill from out. So you're not saying that the wastewater plant is the point source. You have a slightly broader definition. Yeah, yeah, the point source is the land that borders the water. So if there are gullies that are going down into the water from on top of the hills- Can you give us your best case? I mean, it's there that we're having a problem, I think. The best case for the notion that that is a satisfactory identification of a point source. Well, we cited a number in the brief, including from this court, where it basically says you don't have to name every potential violations or every potential reason why it's occurring. You just have to identify that there's a discharge into this river. It's been occurring for a number of years. It continues to occur, and it's horrible. It's just simply horrible that the fecal chloroform is being allowed to go into this river from their property. And we believe that that's sufficient to fulfill the notice of intent. Okay. I appreciate your arguments, both of you. Thank you very much. We'll take this under advisement. Okay.